UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BUISSON CREATIVE STRATEGIES, LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO: 15-6272 |
| CHRISTOPHER ROBERTS, ET AL. | SECTION "H" |

## ORDER AND REASONS

Before the Court are Defendant Jefferson Parish's Alternative Motion for Dismissal Under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction, Rule 12(b)(6) for Failure to State a Claim Upon Which Relief Can be Granted, and/or Rule 56 for Summary Judgment (Doc. 167) and Defendant Chris Roberts's Motion to Dismiss and/or Motion for Summary Judgment for Lack of Subject Matter Jurisdiction (Doc. 169). For the following reasons, these Motions are **GRANTED**.

## BACKGROUND

Plaintiffs Buisson Creative Strategies ("BCS") and Gregory Buisson bring this action against Christopher Roberts and Jefferson Parish alleging numerous constitutional violations. Plaintiff BCS is a business that provides

public relations, advertising, marketing, event management, graphic design, and consulting services. Prior to November 4, 2015, it had numerous contracts with Jefferson Parish including providing services to the Jefferson Parish Convention and Visitors Bureau, event management services for Lafreniere Park, and event management services associated with the review stands for Jefferson Parish's East Bank Mardi Gras parades. During the fall 2015 primary election for the Jefferson Parish Council, Plaintiffs provided consulting services to Louis Congemi in his race for Parish Council against incumbent Defendant Christopher Roberts. BCS produced various commercials for the Congemi campaign alleging that Roberts was unqualified for office because of, inter alia, his alleged failure to file income tax returns.

Roberts ultimately won re-election. According to the Complaint, he was intent on retaliating against Plaintiffs for their role in creating the Congemi attack ads. Plaintiffs aver that Roberts impermissibly used his legislative authority to enact Ordinance 25045 (the "Ordinance"), which had the alleged effect of terminating BCS's contracts with the Parish and its entities. The ordinance provides that any person or firm who has received compensation for the management or consulting of political campaigns for a candidate for the council or for Jefferson Parish President during an "election cycle" cannot be awarded contracts with the Parish regardless of whether a candidate wins or loses. It also purported to terminate such individual's existing contracts with the Parish. Plaintiffs aver that this ordinance is narrowly tailored to target them and only them. They allege that the ordinance violates the contracts clause, the First Amendment, equal protection, due process, and the prohibition on bills of attainder. They seek an injunction prohibiting enforcement of the ordinance and damages pursuant to 42 U.S.C. § 1983.

## LEGAL STANDARD

If, at any time, the court determines that it lacks subject-matter jurisdiction, the court must dismiss the action.[1] "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[2] As a prerequisite to jurisdiction the U.S. Constitution requires, at a minimum, that a case present an actual "case or controversy" as defined by article III.[3] Standing is an element of the constitutional requirement of "case or controversy,"[4] and lack of standing deprives the court of subject matter jurisdiction.[5] The party seeking to invoke federal jurisdiction has the burden of establishing standing.[6]

## LAW AND ANALYSIS

At the Court's behest, Defendants filed the instant Motions challenging Plaintiffs' standing to bring this suit. Defendants cite primarily to the fact that Plaintiffs have lost no parish contracts since the enactment of the Ordinance and that the subject Ordinance has been suspended by the Parish Council pending the resolution of this litigation. The justiciability doctrines of standing, mootness, political question, and ripeness all stem from the case or controversy requirement set forth in Article III of the United States

---

[1] Fed. R. Civ. P. 12(h)(3).

[2] *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

[3] *See* U.S. Const. art. III, § 2; *Flast v. Cohen*, 392 U.S. 83, 94–95 (1968).

[4] *Lang v. French*, 154 F.3d 217, 222 n.28 (5th Cir.1998).

[5] *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 354–55 n. 1 (5th Cir. 2008).

[6] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61(1992); *Grant v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003).

Constitution.[7] The basic requirements of standing, as set forth by the Supreme Court, are as follows:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[8]

Similar to standing, the ripeness doctrine requires dismissal of cases that are merely abstract or hypothetical.[9] "[E]ven where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness."[10] The rationale behind this rule is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."[11]

The party invoking federal jurisdiction bears the burden of establishing standing.[12] "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."[13] Defendants have each filed Motions challenging

---

[7] *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012).
[8] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).
[9] *Greenstein*, 691 F.3d at 715.
[10] *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008).
[11] *Greenstein*, 691 F.3d at 715
[12] *Roark & Hardee,* 522 F.3d at 545.
[13] *Id.*

4

Plaintiffs' standing in this action, pointing to their lack of damages and the suspension of the Ordinance at issue.

Plaintiffs respond in opposition to Defendants' Motions, arguing (1) that they have established standing on their request for injunctive relief based on their First Amendment Claims, (2) that they have similarly established standing on their request for injunctive relief on their Equal Protection claims, and (3) that they have sustained sufficient damages to establish standing on their remaining claims. The Court will address these arguments in turn.

## I. First Amendment Claims

In the context of constitutional claims, particularly First Amendment claims, the standing requirements are somewhat relaxed. "It follows from *Lujan* that if a plaintiff is an object of a government regulation, then that plaintiff ordinarily has standing to challenge that regulation."[14] In First Amendment pre-enforcement challenges, chilling a plaintiff's speech is a constitutional harm adequate to satisfy the injury-in-fact requirement."[15] To establish standing, however, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."[16] Additionally, "[t]o prove an injury in fact sufficient 'to raise a First Amendment facial challenge, however, a plaintiff must produce evidence of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'"[17]

---

[14] *Duarte ex rel. Duarte v. City of Lewisville, Tex.*, 759 F.3d 514, 518 (5th Cir. 2014)
[15] *Justice v. Hosemann,* 771 F.3d 285, 291 (5th Cir. 2014).
[16] *Nat'l Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 208–09 (5th Cir. 2011) (internal citations omitted).
[17] *Id.* (internal citations omitted).

The Court finds instructive the case of *Choice Inc. of Texas v. Greenstein*.[18] There, the court considered whether an outpatient abortion clinic in Louisiana had standing to bring a pre-enforcement challenge to amended provisions of Louisiana law which changed the standard for license denial, revocation, and suspension.[19] The court found that the claims were not ripe for adjudication, as the law at issue had not yet been enforced in the manner feared by the plaintiffs.[20] Plaintiffs had, therefore, suffered no hardship as required to render the claims ripe for adjudication.[21] Similarly, in this matter, it is undisputed that the Parish has taken no steps to cancel any of Plaintiffs' contracts in reliance on the Ordinance. In fact, quite the contrary, during the pendency of this litigation the Parish has awarded new contracts to Plaintiffs through 2018. Accordingly, because Plaintiffs can establish no imminent injury or present hardship, the Court lacks subject matter jurisdiction over these claims. As the *Greenstein* court noted, should Plaintiffs suffer their feared injury and be deprived of any Parish contracts in reliance on the Ordinance, they may return to this court and apply for injunctive relief. Until such time, however, relief of this type is premature.[22]

**II. Equal Protection**

Plaintiffs next aver that they have suffered an equal protection violation because Defendants have imposed a discriminatory classification that prevented them from bidding on future contracts. "The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the

---

[18] *Greenstein*, 691 F.3d at 713.
[19] *Id.*
[20] *Id.* at 117.
[21] *Id.*
[22] *Id.*

6

benefit."[23] To establish standing with regard to public contracts, a party "need only demonstrate that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis."[24] Again, however, the undisputed facts in this matter indicate that Plaintiffs lack standing to pursue their claims. No discriminatory policy currently exists, as evidenced by the fact that Plaintiffs have been awarded Parish contracts during the pendency of this litigation.[25] Accordingly, because Plaintiff cannot establish "injury in fact," their claims fail.

## III. Remaining Claims

Plaintiffs aver that they have standing to pursue their remaining claims because the Ordinance has caused them to suffer actual damages. Specifically, Plaintiffs aver that they have lost contracts with Siemens, New Orleans Distillers, a political candidate for statewide office, and the Jefferson Parish Chamber of Commerce. They further aver that they have suffered a significant reduction in revenue. Plaintiffs have, however, provided no evidence showing that this damage is "fairly traceable" to Defendants' actions in enacting the Ordinance. The Ordinance imposes no prohibition on the contractual relationships between Plaintiffs and third parties, as it only provides that "[n]o person or firm [affected by the Ordinance] shall be awarded a contract *with Jefferson Parish*."[26] Plaintiffs would have this Court inquire into the subjective

---

[23] Ne. *Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993).

[24] *Id.*

[25] In support of standing, Plaintiffs cite to a series of entities that it avers "have had and again will have contracts to award." Doc. 187. Plaintiffs state that they are at a disadvantage in bidding on these hypothetical contracts; however, they point to no contract on which they have actually bid. Accordingly, this contention is purely speculative and insufficient to establish standing.

[26] Doc. 99-2 (emphasis added). The Ordinance also bars non-governmental organizations from using funds appropriated by the Parish to enter into such contracts.

7

motivations of third parties in determining damages. This the Court cannot do. Indeed, these losses are just the type of "independent action[s] of some third party" that the Supreme Court has cautioned do not give rise to standing.[27]

The Court makes no finding as to whether the Ordinance, if enforced, would pass constitutional muster. Instead, it merely finds that Plaintiffs cannot at this time show a case or controversy sufficient to give this Court subject matter jurisdiction over the instant dispute. Should the Parish take active steps to enforce the Ordinance, Plaintiffs may return to this Court and apply for a temporary restraining order. At present, however, Plaintiffs have suffered no injury in fact sufficient to give rise to standing.

## CONCLUSION

For the foregoing reasons, Defendants' Motions are **GRANTED**. Plaintiffs' claims are **DISMISSED**.

New Orleans, Louisiana this 21st day of June, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[27] *Lujan*, 504 U.S. at 560–61.